**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 19 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

PATRICIA D. SWART,

Plaintiff-Appellant,

v.

PREMIER PARKS CORPORATION;
SIX FLAGS ELITCH GARDENS,

Defendants-Appellees.

No. 03-1048
(D.C. No. 00-D-2105)
(D. Colo.)

ORDER AND JUDGMENT   *

Before **McCONNELL** , **ANDERSON** , and **BALDOCK** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.   *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

\*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Patricia Swart appeals from a jury verdict rendered in favor of her former employer, Premier Parks and Six Flags Elitch Gardens (Elitch) on her suit alleging Elitch discharged her because of her disability, in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 to 12213 (ADA). She challenges the district court's instruction to the jury regarding the impairments she claimed and the major life activities affected by those impairments. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I.

Plaintiff was hired in 1996 by Elitch, an amusement park, as a seasonal employee. As such, she was laid off at the end of each park season, usually October, and rehired at the start of the next. At the end of the 1998 season, however, she was accepted for a position in Elitch's corporate loss prevention department. She began work in October 1998 and worked there year-round until her termination in October 1999. Plaintiff believed her new job was a permanent, year-round position; Elitch contended at trial that the position was seasonal.

In May 1999, plaintiff was diagnosed with breast cancer and immediately underwent a left radical mastectomy. She then underwent chemotherapy and radiation treatments, which led to side effects of extreme fatigue, recurrent headaches, nausea, vomiting, low blood counts, and anemia. She could not fully lift her left arm and suffered insomnia. She missed time from work due to her

-2-

chemotherapy and radiation treatments and the resultant fatigue and other side effects, and she was often unable to work a full forty-hour work week.

In October 1999, Elitch ordered all non-essential seasonal personnel to be laid off. Plaintiff's supervisor retained one seasonal employee and a newly hired employee, but laid off plaintiff. Plaintiff contended she was selected for termination because of her breast cancer and related disabilities. Elitch contended she was terminated because she was a non-essential, seasonal employee. Two years later, plaintiff underwent further surgery and lost her right breast.

II.

"The ADA prohibits employment discrimination on the basis of an employee's disability." *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1128 (10th Cir. 2003). At issue in this case is ADA provision 42 U.S.C. § 12102(2)(A), which defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." Three elements must be established for a plaintiff to be considered "disabled" under § 12102(2)(A). "First, the plaintiff must have a recognized impairment; second, the plaintiff must identify one or more appropriate major life activities; and third, the plaintiff must show that the impairment substantially limits one or more of those activities." *Doebele*, 342 F.3d at 1129.

> The plaintiff must articulate with precision the impairment alleged
> and the major life activity affected by that impairment, and the court

-3-

is to analyze only those activities identified by the plaintiff. Whether the plaintiff has an impairment within the meaning of the ADA is a question of law for the court to decide. Whether the conduct affected is a major life activity for purposes of the Act is also a legal question for the court. However, ascertaining whether the impairment substantially limits the major life activity is a factual question for the jury.

*Id.* (quotation and citation omitted).

The district court instructed the jury that plaintiff had recognized impairments of "breast cancer, loss of her left breast and the resulting disfigurement," and that plaintiff had "identified one or more major life activities affected by her impairments," namely, "working, sleeping and lifting." Aplt. App., Vol. VII at 923 (instruction no. 16).

Plaintiff contends on appeal that the district court erred in refusing to add to this instruction a determination that "the loss of both breasts in a female and the resultant impact upon her ability to engage in reproductive and sexual activities constitute an impairment." Aplt. Br. at 11. Where the legal accuracy of a jury instruction is challenged, our review is de novo; where the challenge concerns the district court's decision to give a particular instruction, we review for abuse of discretion. *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 963 (10th Cir. 2002).

We note initially that plaintiff's counsel appears to confuse an "impairment" with a "major life activity," as defined in the ADA. A physical impairment is defined as:

> Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine[.]

29 C.F.R. § 1630.2(h)(1).

Applying this definition, the district court found that plaintiff's impairments were breast cancer, loss of her left breast, and the resulting disfigurement. The district court properly rejected plaintiff's request to include the loss of *both* breasts as an impairment because plaintiff's second breast was removed two years after her termination from Elitch. *See Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1257 n.4 (10th Cir. 2001) (considering only impairments suffered prior to the adverse employment action).

The remainder of plaintiff's requested addition ("the resultant impact upon her ability to engage in reproductive and sexual activities"), more accurately describes a "major life activity." "Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg., Kentucky,*

*Inc. v. Williams*, 534 U.S. 184, 195 (2002). "'Major life activities' . . . refers to those activities that are of central importance to daily life." *Id.* at 197.

Neither the district court nor Elitch questioned the premise that the ability to reproduce or to engage in sexual conduct constitute "major life activities." *See Bradgon v. Abbott*, 524 U.S. 624, 638 (1998) (holding that "[r]eproduction and the sexual dynamics surrounding it are central to the life process itself."). Rather, the district court ruled that there was no testimony, medical or otherwise, that plaintiff's breast cancer or loss of a breast had interfered with her ability to reproduce or engage in sexual activities. Aplt. App., Vol. VI at 696, 697, 701, 707-08.

> It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires [claimants to offer] evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial. That the [ADA] defines "disability" "with respect to an individual," 42 U.S.C. § 12102(2), makes clear that Congress intended the existence of a disability to be determined in such a case-by-case manner.

*Toyota*, 534 U.S. at 198 (quotations and citations omitted).

It is this test that plaintiff fails. After carefully reviewing the record, we conclude that plaintiff fails to meet the high threshold of demonstrating that the district court abused its discretion in declining to issue the requested instruction. We agree with the district court that there was no evidence showing that plaintiff's impairments interfered with any of the additional life activities she

-6-

requested be included in this jury instruction. *See Coletti v. Cudd Pressure Control*, 165 F.3d 767, 776 (10th Cir. 1999) ("[w]hen a court rules as a matter of law that a party introduced insufficient evidence to warrant the jury's consideration of a claim, it is perfectly within the court's discretion to decline to instruct the jury on the matter."). The only evidence at all related to reproduction was plaintiff's testimony that she is of child-bearing age, and that breasts were important for child-rearing and sexual contact. Aplt. App., Vol. V at 640. Plaintiff did not testify that she was unable to reproduce or was restricted or impaired in any way in her ability to become pregnant or bear a child, nor was there any medical evidence to this effect. Further, plaintiff did not testify that she had experienced any difficulties in her ability to engage in sexual conduct.

Plaintiff's counsel argued to the district court that one's ability to be sexually active or to breast feed a child would be impaired by the loss of a breast, but hypothetical arguments of counsel are insufficient. The ADA requires plaintiff to be "presently–not potentially or hypothetically–substantially limited [in a major life activity] in order to demonstrate a disability." *Sutton v. United Air Lines, Inc*., 527 U.S. 471, 482 (1999).

> The definition of disability also requires that disabilities be evaluated "with respect to an individual" and be determined based on whether an impairment substantially limits the "major life activities of such individual." § 12102(2). [W]hether a person has a disability under the ADA is an individualized inquiry. *See Bragdon v. Abbott*, 524 U.S. 624, 641-642 . . . (1998) (declining to consider whether

HIV infection is a *per se* disability under the ADA); 29 C.F.R. § pt. 1630, App. § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual.").

*Id.* at 483; *compare Keller v. Bd. of Educ. of City of Albuquerque*, 182 F. Supp. 2d 1148, 1155 (D. N.M. 2001) (finding breast cancer interfered with plaintiff's sexual conduct and reproduction based on unrefuted evidence her medications made sexual intercourse painful), with *Treiber v. Lindbergh Sch. Dist.*, 199 F. Supp. 2d 949, 960 (E.D. Mo. 2002) (finding breast cancer did not substantially interfere with reproduction and sexual conduct where plaintiff made only conclusory allegations). On the record developed in this case, we find no error in the district court's rejection of these requested additions to the jury instructions.

Plaintiff also contends the district court erred in rejecting her requested instruction that "suffering migraines for years constitutes an impairment." Aplt. Br. at 11. Plaintiff testified that she began suffering from migraine headaches during her chemotherapy treatments and that she can have as many as three or four migraine headaches a week. Aplt. App., Vol. III at 275. She does take medication for her migraines, and she testified it relieves the symptoms of her migraine headaches all but two or three times a month. *Id.* at 275-77.

The district court rejected plaintiff's request to include migraine headaches as an identified impairment, stating that it was not an impairment "based on the law." Aplt. App., Vol. VI at 707. A few courts have recognized that an individual's migraines, given probative evidence demonstrating their severity and functional impact, can constitute a physiological disorder which affects a plaintiff's neurological and vascular systems, and, therefore, be an impairment as defined by the ADA. *Hendry v. GTE North, Inc.*, 896 F. Supp. 816, 824 (N.D. Ind. 1995); *Carlson v. InaCom Corp.*, 885 F. Supp. 1314, 1320 (D. Neb. 1995); *Dutton v. Johnson County Bd. of County Comm'rs*, 859 F. Supp. 498, 506 (D. Kan. 1994). Plaintiff's testimony does show some level of impairment, but neither her testimony nor any medical evidence in the record characterize plaintiff's migraines as causing significant functional impairment. Plaintiff did state that some of her migraines can be so debilitating that she cannot get out of bed and is sick to her stomach. She did not describe, however, any life activities affected by her migraines. She testified only that she had to leave work at Elitch early one day because of a migraine headache. Aplt. App., Vol. III at 276.

Thus, plaintiff's testimony does not show her migraines limit her ability to engage in work or any other major life activity. *See Toyota*, 534 U.S. at 197; *see also Agee v. Northwest Airlines, Inc.*, 151 F. Supp. 2d 890, 895-96 (E.D. Mich. 2001) (holding plaintiff's migraines not a disability under the ADA

because evidence showed migraines did not substantially limit his major life activities). In order for the court to conclude that plaintiff's migraines substantially limited her major life activity of working, she would have to show that her migraines render her unable to work in a broad class of jobs. *Sutton*, 527 U.S. at 491 (the "statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs."). There was no such evidence here.

Further, the determination whether an individual is disabled for ADA purposes is to be made with reference to measures that mitigate the impairment. *Id.* at 488. Here, plaintiff's testimony was that, except for two or three times a month, her medication controlled the symptoms of her migraines. We cannot say on this record that plaintiff demonstrated that she was limited in any major life activity at the time of the employment actions complained of, as required by § 12102(2)(A). Because plaintiff failed to present evidence that her migraines limited any of her major life activities, the district court did not err in refusing to include migraines as a limiting impairment in the jury instructions.

The judgment of the district court is AFFIRMED.

Entered for the Court

Michael W. McConnell
Circuit Judge

-10-